IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


**LEUVODIA CUMMINGS**                                                                    **PLAINTIFF**

**vs.**                                                              **CIVIL ACTION NO. 1:12cv0183-SAA**

**MICHAEL ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                                      **DEFENDANT**


## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Leuvodia Cummings for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed her applications on June 8, 2010, alleging disability beginning November 27, 2008.[1] Docket 9, p. 137-44. Her claim was denied initially on July 23, 2010 and on reconsideration on October 6, 2010. *Id.* at 81-90, 93-98 . She filed a written request for hearing on November 8, 2010 and was represented by counsel at the hearing held a year and a half later on March 20, 2012. *Id.* at 26-76. The Administrative Law Judge (ALJ) issued a partially favorable decision on August 20, 2010 (*Id.* at 6-26), and the Appeals Council denied plaintiff's request for a review on June 20, 2010. *Id.* at 1-5. Plaintiff timely filed the instant appeal from the decision, and it is now ripe for review.

---

[1] Plaintiff amended her onset date to January 7, 2009 at the hearing before the ALJ. Docket 9, p. 30.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on June 4, 1961and was 47 years old on the alleged onset date and 48 years old at the date last insured on December 31, 2009. Docket 9, p. 37. Prior to her date last insured, she was considered a "younger individual age 45-49" for purposes of the Medical Vocational Rules. She completed ninth grade and was previously employed as a waitress, factory laborer and a fast food cook. *Id.* at 35, 39. Plaintiff contends that she became disabled before her application for SSI, DIB and POD due to osteoarthritis, degenerative disc disease, migraine headaches, obesity, depression, personality disorder, back problems, arthritis, high blood pressure and knee problems. *Id.* at 156. The ALJ found plaintiff disabled after she turned 50 on June 4, 2011, but concluded that even though the plaintiff had severe impairments and could not perform her past relevant work, there were jobs that existed in the national economy that plaintiff could have performed prior to her 50th birthday. Since plaintiff only remained insured through December 31, 2009, the primary focus of the hearing before the ALJ and on appeal is whether plaintiff became disabled prior to her 50th birthday on June 4, 2011, such that she should have been deemed disabled prior to the date last insured.

Plaintiff claims that the ALJ and/or the Appeals Council erred when they:

1. failed to consider Listing 12.05C;

2. failed to resolve a conflict between the VE's testimony and the DOT;

3. improperly assigned weight to the opinions of a nurse practitioner; and

4. failed to include plaintiff's school records in the official record submitted to the court.

Because the court agrees with plaintiff that the ALJ should have conducted an examination of whether plaintiff's mental impairments satisfied Listing 12.05C, the court will not address the plaintiff's remaining issues.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[5] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[6] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any

3

does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such

---

gainful activity." 20 C.F.R. § 416.925 (2003).

[7] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[8] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[9] *Muse*, 925 F.2d at 789.

[10] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

Plaintiff argues that the ALJ erred by failing to conduct any analysis of whether plaintiff's impairments met or equaled Listing 12.05C. Docket 13, p. 10. The Commissioner responds that the ALJ's failure to consider Listing 12.05C is harmless error because plaintiff's impairments do not meet or equal the requirements of Listing 12.05C. Docket 15, p. 7. The requirements for Listing 12.05C are:

> Listing 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

It is undisputed that the ALJ did not evaluate plaintiff's alleged mental retardation under Listing 12.05. The ALJ concluded that an analysis under 12.05 was unnecessary because, according to the ALJ, plaintiff does not have a significant work-related limitation of function. Docket 9, p. 14. The ALJ relied on upon plaintiff's work history, her past marriages, care of her children, and her ability to drive and care for herself to show that plaintiff has significant adaptive functioning, therefore failing the "significant work-related limitation of function" prong. *Id.* In doing so, the ALJ incorrectly applied the law.

Plaintiff's case is almost identical to *Nieves v. Secretary of Health and Human Services*, 775 F.2d 12 (1st Cir. 1985). In *Nieves*, the Court held that a mentally retarded claimant's additional physical impairment will be found to impose significant limitations on her ability to do basic work activities if it is a "severe" impairment as contemplated at Step 2 of the sequential process. 775 F.2d at 14. Nieves had regularly worked as a seamstress in the decade prior to her alleged onset date and "the Appeals Council noted the I.Q. scores in evidence if accurate, would be so limiting that the claimant would never have been able to perform her prior work as seamstress." *Id.* (internal quotation omitted). The First Circuit held that the Secretary's discrediting of the I.Q. scores was improper because the Secretary may not substitute her opinions for uncontroverted medical evidence and because "courts do not engage in further inquiry as to the first (I.Q.) Requirement of Listing 12.05(C) once they find that the claimant's I.Q. was below 70. *Id.* Additionally, the Court held that the Secretary incorrectly reasoned that plaintiff could not work with an I.Q. score below 70, instead it is the combination of the I.Q. score and the additional impairment that renders plaintiff disabled. *Id.* In awarding benefits, the First Circuit held that the Appeals Council improperly questioned the plaintiff's I.Q. and that

6

plaintiff satisfied the second prong of 12.05C because her chronic myositis was found to be severe. *Id.*

The Commissioner relies upon *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), for the proposition that "the decision not to consider a particular listing is harmless error if the record shows such listing is not met." Docket 15, p. 7. However, *Audler's* holding is not that simple. The ALJ in *Audler* did not identify the impairment for which Audler's symptoms failed to meet and similarly did not give any explanation for how the ALJ determined that her symptoms failed to meet the listing. *Audler*, 501 F.3d at 448. The Fifth Circuit held that the ALJ's failure was "beyond meaningful judicial review." *Id.* In its analysis of whether the ALJ's error was harmless, the Court noted "[p]rocedural perfection in administrative proceedings is not required as long as the substantive rights of the party have not been affected." *Id.* (internal quotes omitted). After reviewing the record, the Court held that Audler "met her burden of demonstrating that she meets the Listing requirements for § 1.04A, and therefore her substantive rights were affected by the ALJ's failure to set out the bases for her decision at step three." *Id.* at 449. Audler's case was reversed and remanded. *Id.*

Plaintiff asserts that the ALJ improperly held that it was unnecessary to evaluate plaintiff's mental retardation under Listing 12.05 because she failed to satisfy the second prong of 12.05C. Interestingly, instead of acknowledging that the ALJ improperly determined that plaintiff failed to meet the additional physical requirement, which the ALJ clearly did, the Commissioner asserts that plaintiff has not demonstrated the requisite deficits in adaptive functioning initially manifested during the developmental period. This is exactly why the court asked the Commissioner to file a Sur-Reply and advise whether plaintiff's grades were received

7

by the Appeals Council and considered as part of the record.[12]  Plaintiff asserts, and the court agrees, that her school records should be considered in making the determination as to whether plaintiff has shown deficits in adaptive functioning initially manifested during the developmental period.

Therefore, the undersigned finds that the ALJ, or more recently the Appeals Council, did not satisfy his affirmative duty to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  The ALJ should have evaluated plaintiff's mental retardation under Listing 12.05C pursuant to *Audler* and certainly pursuant to *Nieves*.  While the court is not convinced that plaintiff has satisfied the initial requirement of a deficit in adaptive functioning initially manifested during the developmental period, it is clear that plaintiff's school records, including her grades, are a necessary element to this requirement and should be included in the transcript.  Further, the ALJ clearly erred when he failed to conduct a 12.05 analysis based upon his incorrect assertion that plaintiff "does not show a significant work-related limitation of function." Docket 9, p. 18.  The ALJ had already determined that plaintiff suffered from severe impairments of "back disorder, osteoarthritis of the knee, hypertension, obesity, depression, and borderline personality disorder." *Id.* at 16.  The

---

[12] In her Brief, plaintiff noted that the Commissioner failed to include her school grades in the transcript.  Docket 12.  In response, the Commissioner asserted that the plaintiff had offered no evidence that she had actually submitted the school grades to the Appeals Council.  Docket 15, p. 18.  The Commissioner agreed that plaintiff's counsel had submitted a brief and a document pertaining to the DOT, but no school records.  *Id.*  However, in response, plaintiff provided a fax cover sheet as well as the 22 pages that were sent to the Appeals Council, including her school grades.  The undersigned as the Commissioner to respond and indicate whether the school grades were part of the transcript and whether they had been considered by the Appeals Council.  Docket 18.  The Commissioner filed a Sur-Reply Brief acknowledging that the school grades were not part of the record submitted to the court, but failing to confirm or deny whether ODAR actually received them.  Docket 19.

finding of a severe physical impairment satisfies the significant work-related limitation of function prong, therefore making the ALJ's rationalization for failing to conduct the 12.05 analysis error and the decision unsupported by substantial evidence.

## IV.  PLAINTIFF'S REMAINING ARGUMENTS

This action will be remanded to the ALJ for (1) evaluation of plaintiff's mental retardation under Listing 12.05, including obtaining additional evidence of plaintiff's grades, any testing conducted prior to age 22, and additional expert opinions if necessary.  Because the court is remanding for further consideration of these issues, the court need not address the merits of the plaintiff's remaining arguments at this time.

## V.  CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day. This, the 14th day of May, 2013.

                                          /s/ S. Allan Alexander
                                          UNITED STATES MAGISTRATE JUDGE